| | |
|---|---|
| CONSOLIDATED INFRASTRUCTURE GROUP, INC., ERIC MOODY, ZACK MANTEY, BRIAN HANNA, TRAVIS DANIELS, BRENT COFFIELD, and TOM ORTH,<br><br>Plaintiffs,<br><br>v.<br><br>USIC, LLC, USIC LOCATING SERVICES, LLC, and LOCATE HOLDINGS, INC.,<br><br>Defendants. | 8:16CV472<br><br>**MEMORANDUM AND ORDER** |

This matter is before the court on a motion to dismiss or, in the alternative, to stay or transfer this action, filed by defendants USIC, LLC; USIC Locating Services, LLC; and Locate Holdings, Inc., (collectively, "USIC"), Filing No. 13.[1]

This is an action for declaratory judgment. The individual plaintiffs are former employees of USIC. Plaintiff Consolidated Infrastructure Group, Inc., ("CIG") is a company formed by a former USIC employee, and the six individual plaintiffs are also former USIC employees. The plaintiffs seek a determination that (1) they have not misappropriated trade secrets under the Defend Trade Secrets Act of 2016 ("DTSA"), 18 U.S.C. § 1832 et seq.; (2) that the restrictive covenants contained in the agreements signed by plaintiffs Brian Hanna, Travis Daniels and Eric Moody are unenforceable; and (3) the USIC restrictive covenants are unlawful restraints of trade under state and

---

[1] Also pending is USIC's motion to supplement the record. USIC submits more recent filings from the case pending in the United States District Court for the Southern District of Indiana, *USIC, et al., v. Coffield, et al.*, No 1:16cv-3285 (S.D. Ind. Dec. 5, 2016). The pleadings in the other case are a matter of public record and the motion will be granted.

federal antitrust laws, including the Sherman Act, 15 U.S.C. § 1. They also seek to enjoin enforcement of the restrictive covenants. Jurisdiction is premised on 28 U.S.C. §§ 1331 and 1337.[2]

USIC moves to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) and for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). It also relies on the federal comity doctrine on concurrent jurisdiction, the doctrine of *forum non conveniens*, and 28 U.S.C. § 1404(a) in its alternative motion to stay or transfer this action to the United States District Court for the Southern District of Indiana where an action involving the same parties, *USIC, et al., v. Coffield, et al.*, No 1:16cv-3285 ("the Indiana Action") is pending.

I.    BACKGROUND

    A.    Nebraska Action

Defendant USIC provides underground utility location and damage prevention services throughout the United States and Canada. In their complaint, the plaintiffs allege that USIC acquired its dominant market share by eliminating competition through a series of acquisitions and by utilizing anticompetitive business practices to eliminate or stifle competition.[3] They allege USIC entered into a series of exclusive agreements with vendors for software and equipment which provide USIC with a competitive

---

[2] Section 1331 is the general federal question jurisdiction statute. 28 U.S.C. § 1331. Section 1337 ordains that "(t)he district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies." 28 U.S.C. § 1337.

[3] According to the plaintiffs, USIC is the largest outsourced Locating Services contractor in the United States, with a market share exceeding seventy (70%) percent. Additionally, USIC boasts that it has captured over ninety-five (95%) of the outsourced Locating Services market for Fortune 500 utilities and telecommunications companies in the states in which USIC operations.

advantage by denying rivals access to field tools. Further, they contend USIC utilizes overly restrictive and anticompetitive employment agreements to restrict former employees from working for rivals, and to threaten rivals with litigation.

CIG is a competing Locating Services provider formed in 2016. CIG hired seven USIC employees in 2016, six of whom are now plaintiffs.[4] Plaintiff Eric Moody was hired by CIG in May 2016 and Brian Hanna, Travis Daniels, Brent Coffield, Zack Mantey and Tom Orth were hired in September 2016. While employed at USIC, plaintiffs Moody, Hanna and Daniels each signed a Protective Covenants Agreement ("Agreement") prohibiting them from, among other things: (1) improperly competing with USIC following termination of employment, (2) soliciting customers or employees of USIC, or (3) utilizing confidential information or trade secrets belonging to USIC following their separation from employment. Hanna and Daniels also signed Non-Qualified Stock Option Agreements containing similar restrictive covenants.

The covenants signed by Moody, Hanna and Daniels' have explicit forum selection and choice of law clauses, requiring that Indiana law governs any dispute and that courts in Marion County, Indiana are the exclusive venue and forum for such disputes.[5] Though plaintiffs Brent Coffield, Zack Matney and Tom Orth did not sign

_____

[4] In the Complaint, plaintiffs allege former USIC employee Erik Egeberg, who was hired by CIG in May 2016, filed a lawsuit in the District Court for Lancaster County, Nebraska, seeking a declaration that the restrictive covenants contained in his agreement violated public policy and were therefore unenforceable. *Egeberg v. USIC, LLC et al.*, Case No. CI 16-2112, District Court of Lancaster County, Nebraska. They allege that shortly after Egeberg challenged the legal validity of the restrictive covenants, the matter was settled.

[5] The forum selection clause provides:

The laws of the State of Indiana will control the interpretation and application of this Agreement, without regard to any conflicts of law principles of Indiana or any other

3

noncompete or nondisclosure agreements, USIC contends they explicitly incurred and acknowledged an ongoing obligation to refrain from disclosing USIC's confidential information.

On October 14, 2016, USIC sent cease and desist letters to CIG and to each of the individual plaintiffs asserting they had removed, retained, used, and/or disclosed confidential information belonging to USIC. The letters also asserted that plaintiffs Moody, Hanna and Daniels had violated explicit written covenants not to compete with USIC or solicit customers or employees of USIC. The letters demanded that the individual plaintiffs cease all such activity immediately, and stated that USIC would not hesitate to pursue legal action should the actions continue.

On October 19, 2016, the plaintiffs filed this action for declaratory and injunctive relief. Summonses were requested and issued on November 19, 2016, and the record shows that service was effected on the defendants between November 18, 2016 and November 28, 2016. Filing Nos. 4–10. USIC's corporate disclosure statement shows USIC, LLC is a limited liability company organized under the laws of Delaware and based in Indianapolis, Indiana. Its sole member is USIC Holdings, Inc. which is a Delaware C Corporation with its principal place of business in Indianapolis, Indiana. USIC Locating Services, LLC, USIC Locating Services, LLC is a limited liability company based in Indianapolis, Indiana. Its sole member is USIC, LLC, which is a

state to the contrary. I consent to the personal jurisdiction of courts in Marion County, over me and waive all rights to the contrary; and, the exclusive venue and forum for any legal action in a court of law arising from this Agreement shall be a court of competent jurisdiction located in Marion County, Indiana.

Filing Nos. 21-9, 21-10 and 21-11, Protective Covenants Agreements at 7.

limited liability company based in Indianapolis, Indiana. Locate Holdings, Inc. is a Delaware corporation. Filing No. 22.

B. Indiana Action

USIC filed an action in Marion County, Indiana, Superior Court on November 9, 2016. See *USIC, LLC, et al., v. Consolidated Infrastructure Group, Inc., et al.,* Cause No. 49D01 16 11 PL 039993. Filing No. 21-2, Index of Evid., Ex. 1. In that case, USIC asserts claims for misappropriation of trade secrets, breach of contract, tortious interference with a contract, and seeks treble damages for pecuniary loss as a result of a property offense under Indiana Code § 34-24-3-1, against CIG and the former employees. On December 5, 2016, CIG and the former employees (the plaintiffs in this action) removed the case to the United States District Court for the Southern District of Indiana. Filing No. 21-4, Index of Evid. Ex. 3.

Court records in the Indiana case show that removal was based on diversity of citizenship. *See USIC, et al., v. Coffield, et al.*, No 1:16cv-3285, Filing No. 1, Notice of Removal (S.D. Ind. Dec. 5, 2016). Noting that USIC and CIG are both Delaware corporations, USIC moved to remand.[6] *Id.*, Filing No. 11. In response, CIG and the former employees argued that USIC fraudulently joined CIG as a defendant in an effort to destroy diversity and to prevent removal and consolidation with this action. *Id.*, Filing No. 18. Further, the CIG defendants argued the Indiana court should construe USIC's complaint as alleging a claim under the federal DTSA, thus conferring federal question jurisdiction, because in its complaint USIC did not specifically assert its misappropriation

---

[6] For a federal court to have jurisdiction over a suit based on diversity, there must be complete diversity of citizenship—no defendant can share the citizenship of any plaintiff. 28 U.S.C. § 1332(a).

of trade secret claim was based solely on Indiana law. *Id.* USIC responded that it only seeks relief under Indiana state law. *Id.*, Filing No. 21.

Defendants Daniels, Hanna, and Moody (the "signatory defendants") filed an answer to USIC's complaint, for the most part denying the allegations. *Id.*, Filing No. 7. Defendant CIG and the other individual defendants (Coffield, Orth, and Matney, "the non-signatory defendants") moved to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), arguing they lacked sufficient minimal contacts with the State of Indiana. *Id.*, Filing No. 8. In response, USIC argues that those defendants had impliedly consented to be bound by the forum selection clauses in the other defendants' agreements because the non-signing defendants are "closely related parties," making it foreseeable that they would be bound by the forum selection clauses. *Id.*, Filing No. 13. Alternatively, they argue that defendants Coffield, Orth, and Matney purposefully directed activities at the state of Indiana in that they allegedly "reached into USIC's computer servers and networks located in Indiana to copy, remove, disclose and otherwise misappropriate confidential and trade-secret information belonging to USIC," which included "financial statements showing USIC's proprietary competitive pricing scheme; proprietary training methods and programs; and private customer and employee information." *Id.* at 15. They argue that the actions of the former employees were calculated to cause harm in Indiana and is sufficient to create specific personal jurisdiction. *Id.* Also, they argue the Indiana court has personal jurisdiction over defendant CIG because it is foreseeable that a third-party employer would be bound by a forum selection clause in a contract entered into by an employee it recruited. *Id.* It

also argues the tortious actions aimed at Indiana by the former employees can be imputed to CIG. *Id.*

All of the defendants in the Indiana action also moved to transfer the Indiana action to the District of Nebraska pursuant to 28 U.S.C. § 1404(a). Filing No. 22, Motion; Filing No. 23, Brief. They argued venue was proper in Nebraska under 28 U.S.C. 1391(b)(2) because a substantial part of the events giving rise to the claims alleged in this action occurred in Omaha, Nebraska.[7] Filing No. 23. Further they argue that USIC's claims in the Indiana action would be compulsory counterclaims in the Nebraska action. *Id.*

The motions to dismiss, to remand, and to transfer were referred to the United States Magistrate Judge for a report and recommendation. *Id.*, Filing No. 37. The Magistrate Judge exercised his discretion to first examine the motion to remand rather than the motions to dismiss. Filing No. 38, Report and Recommendation at 4. He noted the motion to remand related to subject matter jurisdiction, and that not all defendants had moved to dismiss for lack of personal jurisdiction. *Id.*

---

[7] 28 U.S.C. § 1391(b) governs venue and states that

A civil action may be brought in—

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

The Magistrate Judge found there was not complete diversity and rejected the Indiana defendants' contention argument that the fraudulent joinder exception to complete diversity applied. *Id.* at 5-6. He found USIC's complaint adequately alleged colorable claims against CIG and therefore found no fraudulent joinder. *Id.* at 6. Further, he rejected the CIG defendants' federal question jurisdiction based on application of the "well-pleaded complaint rule." *Id.* at 7. Because complete diversity was lacking and there was no federal question on the face of USIC's complaint, the Magistrate Judge found the Indiana federal district court lacked jurisdiction and recommended to the district judge that the action be remanded to state court.[8] The Magistrate Judge further recommended that the District Court deny the defendants' motion to transfer the action to Nebraska as moot and found the defendants' motions to dismiss for lack of personal jurisdiction could be addressed by the Indiana state court on remand. Objections to the R&R have been filed, but have not been ruled on. *Id.*, Filing No. 41, Objection; Filing No. 44, Response.

C.    Present Motion

In the motion presently pending in this court, USIC moves to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), arguing a lack of sufficient minimum contacts with Nebraska to satisfy the exercise of specific personal jurisdiction. It contends that the plaintiffs rely exclusively on allegations of "general" personal jurisdiction over the Defendants; in other words, they assert "continuous" contacts with the State of Nebraska, but not any contacts that relate to the claims at

---

[8] The Magistrate Judge further recommended that the District Court deny the defendants' motion to transfer the action to Nebraska as moot and found the defendants' motions to dismiss for lack of personal jurisdiction could be addressed by the Indiana state court on remand.

issue.  Filing No. 14, Brief at 5.  USIC argues these allegations do not satisfy the standard for assertion of general personal jurisdiction, as recently clarified by the Supreme Court in *Daimler AG v. Bauman*, 134 S. Ct. 746, 753 (2014).

In response, the Nebraska plaintiffs state that USIC has consented to jurisdiction in this state by registering to conduct business in Nebraska.  They submit evidence that USIC is registered to conduct business in the state of Nebraska in accordance with Nebraska law, and has appointed a registered agent for service of process in Nebraska. Filing No. 21-3.

USIG further argues the action is subject to dismissal under the Supreme Court's *Brillhart/Wilton* doctrine,[9] in deference to the Indiana action addressing the same issues. USIC also moves to dismiss under Federal Rule of Civil Procedure 12(b)(b)(6) based on the forum selection clause of the agreements at issue.

In its alternative motion to stay or transfer under 28 U.S.C. § 1404(a), it argues that the Indiana action takes priority because USIC's complaint in the Indiana action was the first filed based on service of process, and because USIC is the "true plaintiff." It also argues that Indiana is the more convenient forum.

The plaintiffs take essentially the opposite position, arguing that the court has personal jurisdiction over the matter, the motion to transfer should denied on the basis of the "first-filed rule," venue is proper in this district, and the convenience of the parties favors litigation in this forum.

---

[9] In *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491, 494-95 (1942) and *Wilton v. Seven Falls Co.*, 515 U.S. 277, 289-90 (1995), the Supreme Court explains that it is usually appropriate to dismiss—or, at a minimum, stay—a federal declaratory-judgment action where there is a parallel state-court action presenting the same issues between the same parties.

II.    LAW

A.    Personal Jurisdiction

"To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must plead 'sufficient facts to support a reasonable inference that the defendant[ ] can be subjected to jurisdiction within the state.'" *Creative Calling Sols., Inc. v. LF Beauty Ltd.*, 799 F.3d 975, 979 (8th Cir. 2015) (quoting *K–V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 591-92 (8th Cir. 2011). When jurisdiction is challenged on a pretrial motion to dismiss, the nonmoving party need only make a prima facie showing of jurisdiction. *Pangaea, Inc. v. Flying Burrito LLC*, 647 F.3d 741, 745 (8th Cir. 2011). The evidence is viewed in the light most favorable to the plaintiff. *Viasystems, Inc. v. EBM–Papst St. Georgen GmbH & Co.*, 646 F.3d 589, 592 (8th Cir. 2011). However, if the defendant controverts or denies jurisdiction, the plaintiff still carries the burden of proof. *See Dairy Farmers of Am., Inc. v. Bassett & Walker Int'l, Inc.*, 702 F.3d 472, 475 (8th Cir. 2012). At the motion stage, the action should not be dismissed for lack of jurisdiction if the evidence, viewed in the light most favorable to the plaintiff is sufficient to support a conclusion that the exercise of personal jurisdiction over the defendant is proper. *Creative Calling*, 799 F.3d at 979. The plaintiff's prima facie showing must be tested, not by the pleadings alone, but by the affidavits and exhibits presented with the motions and opposition thereto. *Dairy Farmers*, 702 F.3d at 475

"'Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons.'" *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014) (quoting *Daimler AG, v. Bauman*, 134 S. Ct. at 753. This is because a federal district court's authority to assert personal jurisdiction in most cases is linked to service of process on

a defendant 'who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located. *See Daimler AG*, 134 S. Ct. at 753 (quoting Fed. Rule of Civ. Proc. 4(k)(1)(A).

Nebraska's long-arm statute, Neb. Rev. Stat. § 25-536, "extends Nebraska's jurisdiction over nonresidents having any contact with or maintaining any relation to this state as far as the U.S. Constitution permits." *Erickson v. U-Haul Int'l, Inc.*, 738 N.W.2d 453, 463 (Neb. 2007); *see Pecoraro v. Sky Ranch for Boys, Inc.*, 340 F.3d 558, 561 (8th Cir. 2003) (stating that the Nebraska long-arm statute authorizes the exercise of personal jurisdiction to the maximum extent permitted by the due process clause of the Fourteenth Amendment of the United States Constitution). Due process requires that nonresident defendants must have "minimum contacts" with the forum state such that the exercise of personal jurisdiction does not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). The minimum contacts must be "such that [the] defendant 'should reasonably anticipate being haled into court there.'" *Burlington Indus., Inc. v. Maples Indus., Inc.*, 97 F.3d 1100, 1102 (8th Cir. 1996) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291-92, 297 (1980).

The minimum contacts necessary for due process may be the basis for either "general" or "specific" jurisdiction. *Dairy Farmers*, 702 F.3d at 475; *Johnson v. Arden*, 614 F.3d 785, 794 (8th Cir. 2010). The Due Process Clause permits the exercise of "general jurisdiction" to hear "any and all claims against" a defendant if its "affiliations with the State are so continuous and systematic as to render [it] essentially at home in the forum State." *Daimler AG*, 134 S. Ct. at 754 (internal quotation marks omitted).

"Specific jurisdiction," by contrast, is proper when a defendant has certain contacts with the forum State and the cause of action arises out of those contacts. *Creative Calling*, 799 F.3d at 979-80. The inquiry whether a forum state "may assert specific jurisdiction over a nonresident defendant 'focuses on 'the relationship among the defendant, the forum, and the litigation.'" *Walden*, 134 S. Ct. at 1121 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984)). Specific jurisdiction can be shown by proving that the defendants availed themselves of the privileges of conducting business in the state. *See J. McIntyre Mach., Ltd. v. Nicastro*, 131 S. Ct. 2780, 2789 (2011) (plurality opinion) (explaining that purposeful availment hinges on "whether a defendant has followed a course of conduct directed at the society or economy existing within the jurisdiction of a given sovereign").

It is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. *Dairy Farmers*, 702 F.3d at 477; *see also Hanson v. Denckla*, 357 U.S. 235, 253 (1958). The Eighth Circuit has set forth a five-part test for measuring a defendant's contacts with a forum state: (1) the nature and quality of the contacts with the forum state, (2) the quantity of those contacts, (3) the relation of the cause of action to the contacts, (4) the interest of the forum state in providing a forum for its residents, and (5) the convenience of the parties. *Dairy Farmers*, 702 F.3d at 477; *Wells Dairy*, 607 F.3d at 518. The third factor distinguishes whether the jurisdiction is general or specific. *Johnson*, 614 F.3d at 794. The first three factors are primary factors, and the remaining two are secondary. *Id.*

A court is to look at all the factors in the aggregate and examine the totality of the circumstances in determining personal jurisdiction. *Id.*; *see Dairy Farmers*, 702 F.3d at 477. Additionally, a parent corporation may be subject to a court's personal jurisdiction through the contacts of its subsidiary if the subsidiary constitutes the "alter ego" of the parent. *E.g., Anderson v. Dassault Aviation*, 361 F.3d 449, 452-53 (8th Cir. 2004).

Consent is another traditional basis of jurisdiction, existing independently of long-arm statutes. *Knowlton v. Allied Van Lines, Inc.*, 900 F.2d 1196, 1199 (8th Cir. 1990). One of the most solidly established ways of giving such consent is to designate an agent for service of process within the State. *Id.* In Nebraska, a foreign corporation that wishes to transact business in the state must acquire a certificate of authority from the Secretary of State and must "continuously maintain in this state" a registered office and a registered agent. Neb. Rev. Stat. §§ 21–20,168; 21–20,174. Under Nebraska law, "a registered agent of a foreign corporation authorized to transact business in this state is the corporation's agent for service of process, notice, or demand required or permitted by law to be served on a foreign corporation." Neb. Rev. Stat. § 21–20,177. Under Nebraska law, "[b]y designating an agent upon whom process may be served within this state, a defendant has consented to the jurisdiction in personam by the proper court." *Mittelstadt v. Rouzer*, 328 N.W.2d 467, 469 (Neb. 1982); *see also Ytuarte v. Gruner & Jahr Printing & Pub. Co.*, 935 F.2d 971, 973 (1991) (stating that the appointment of an agent for service of process by corporate defendants gives consent to the jurisdiction of a state's courts for any cause of action, whether or not arising out of activities within the state). Such consent is a valid basis of personal jurisdiction. *Ytuarte*, 935 F.2d at 973; *Sondergard v. Miles, Inc.*, 985 F.2d 1389, 1394–95 (8th Cir. 1993) (recognizing consent

as another means to acquire personal jurisdiction over a nonresident defendant). A defendant may voluntarily consent or submit to the jurisdiction of a court which otherwise would not have jurisdiction over it. *Knowlton*, 900 F.2d at 1200.

B.    Parallel Litigation – First Filed Rule

"To conserve judicial resources and avoid conflicting rulings, the first-filed rule gives priority, for purposes of choosing among possible venues when parallel litigation has been instituted in separate courts, to the party who first establishes jurisdiction." *See Nw. Airlines, Inc. v. Am. Airlines, Inc.*, 989 F.2d 1002, 1006 (8th Cir. 1993). "A suit is parallel when substantially the same parties are contemporaneously litigating the same issues in another forum." *Interstate Material Corp. v. City of Chi.*, 847 F.2d 1285, 1288 (7th Cir. 1988). Absent compelling circumstances, the first-filed rule generally gives venue priority to the party who filed suit first. *See Nw. Airlines, Inc.*, 989 F.2d at 1005. However, the "rule 'is not intended to be rigid, mechanical, or inflexible.'" *Id.* (quoting *Orthmann v. Apple River Campground Inc.*, 765 F.2d 119, 121 (8th Cir. 1985)). The court must apply the rule "in a manner best serving the interests of justice." *Id.*

There are two "'red flags' signaling potentially compelling circumstances:  first, that the 'first' suit [is] filed after the other party gave notice of its intention to sue; and, second, that the action [is] for declaratory judgment rather than for damages or equitable relief." *Boatmen's First Nat. Bank v. Kansa Public Emps. Retirement Sys.*, 57 F.3d 638, 641 (8th Cir. 1995); *see Nw. Airlines,* 989 F.2d at 1007. Other factors that may be considered in deciding whether to apply the first-filed rule are the period of time from the date the first-filer receives notice of a possible lawsuit by the natural plaintiff to filing of the first-filer's lawsuit; failure of the first-filer to allege that the natural plaintiff's

claims are having an adverse effect on the first-filer; evidence that the first-filer promised or indicated in some manner that it would not sue, reliance on that indication by the natural plaintiff, followed by the filing of a surprise complaint by the first-filer; and which lawsuit would further the interest of speedy adjudication. (i.e., which suit has further progressed). *See Anheuser–Busch, Inc. v. Supreme Int'l Corp.*, 167 F.3d 417, 419 (8th Cir. 1999); *Midwest Motor Express, Inc. v. Cent. States Se.*, 70 F.3d 1014, 1017 (8th Cir. 1995). A short period of time between notice of intent to sue and the filing suggests that the first-filer raced to the courthouse to usurp the natural plaintiff's forum choice. *See BASF Corp. v. Symington*, 50 F.3d 555, 557-58 (8th Cir. 1995). The "true plaintiff" in a declaratory judgment action could be considered to be the party entitled to injunctive relief or damages. *U.S. Fire Ins. Co. v. Goodyear Tire & Rubber Co.,* 920 F.2d 487, 489 (8th Cir. 1990).

Declaratory judgments are not to be used defensively to deny a prospective plaintiff's choice of forums. *Prudential Ins. Co. of Am. v. Doe*, 140 F.3d 785, 790 (8th Cir. 1998). The "general rule," however, is that a court should "favor[ ] the forum of the first-filed action, whether or not it is a declaratory action." *Genentech, Inc. v. Eli Lilly and Co.*, 998 F.2d 931, 937 (Fed. Cir. 1993), *abrogated on other grounds by Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995).

C. Fed. R. Civ. P. 12(b)(6) and 28 U.S.C. § 1404(a)

The law is unsettled regarding whether Rule 12(b)(6) is an appropriate mechanism for enforcing a contractual forum-selection clause. *See Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 134 S. Ct. 568, 579–80 (2013) (declaring that a forum-selection clause should not be enforced via a Rule 12(b)(3) motion, but

expressly declining to reach the issue of whether Rule 12(b)(6) would be appropriate); *see In re Union Elec. Co.*, 787 F.3d 903, 907 & n.3 (8th Cir. 2015). The Eighth Circuit has also declined to take a position on the viability of Rule 12(b)(6) as an enforcement mechanism for a forum-selection clause. *See Rainforest Cafe, Inc. v. EklecCo, LLC*, 340 F.3d 544, 545 n. 5 (8th Cir. 2003). In *Atlantic Marine*, the Supreme Court held that 28 U.S.C. § 1404(a) provided a freestanding basis to enforce a forum-selection clause by codifying "the doctrine of *forum non conveniens* for the subset of cases in which the transferee forum is within the federal court system." *Id.* at 580.

Under Rule 8 of the Federal Rules of Civil Procedure, a plaintiff's complaint must contain "a short plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(1). Though the statement need not contain detailed factual allegations, it must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* A defendant may obtain dismissal of a claim that fails to satisfy Rule 8 by filing a motion pursuant to Rule 12(b)(6).

On a Rule 12(b)(6) motion, the Court considers not whether the plaintiff will ultimately prevail, but whether the facts permit the court to infer "more than the mere possibility of misconduct." *Id.* at 679. For purposes of this determination, the Court "accept[s] as true the facts alleged, but not legal conclusions or '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016) (quoting *Iqbal,* 556 U.S. at 678). "To survive a motion to dismiss under Rule 12(b)(6) a plaintiff must allege sufficient facts, as

contrasted with bare legal conclusions, to articulate a claim 'that is plausible on its face.'" *Hageman v. Barton*, 817 F.3d 611, 619 (8th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 678). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.*

Under 28 U.S.C. § 1404(a), a district court may transfer any civil action to any other district or division where it might have been brought, "[f]or the convenience of the parties and witnesses" or "in the interest of justice." 28 U.S.C. § 1404(a). The historical and statutory notes associated with this section indicate that "[s]ubsection (a) was drafted in accordance with the doctrine of *forum non conveniens*, permitting transfer to a more convenient forum, even though venue is proper." *See* Historical and Statutory Notes, 28 U.S.C. § 1404. In general, the party seeking transfer bears the burden of establishing that the transfer should be granted. *Terra Int'l, Inc. v. Miss. Chem. Corp.,* 119 F.3d 688, 695 (8th Cir. 1997). Section 1404(a) was designed to prevent a scenario in "which two cases involving precisely the same issues are simultaneously pending in different District Courts" because such a scenario "leads to the wastefulness of time, energy and money." *Cont'l Grain Co. v. The FBL-585*, 364 U.S. 19, 26 (1960). Section 1404(a) is the appropriate provision to enforce a forum-selection clause. *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 134 S. Ct. 568, 579 (2013).

A district court considering a motion pursuant to § 1404(a) would ordinarily "evaluate both the convenience of the parties and various public-interest considerations." *Id.* at 581. However, in *Atlantic Marine*, the Supreme Court stated that

"[t]he presence of a valid forum-selection clause requires district courts to adjust their usual § 1404(a) analysis in three ways." *Id.*

First, no weight is accorded to the plaintiff's choice of forum. *Id.* Rather, "the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Id.* Second, the court "should not consider arguments about the parties' private interests."[10] *Id.* at 582 (explaining that "[w]hen parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses or for their pursuit of the litigation"). Therefore, the court must assume that the parties' private interests "weigh entirely in favor of the preselected forum." *Id.* The court "may consider arguments about public-interest factors only."[11] *Id.* Because such factors will rarely defeat a forum-selection clause, "the practical result is that forum-selection clauses should control except in unusual cases." *Id.* Third, "a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules—a factor that in some circumstances may affect public-interest considerations." *Id.*

Indeed, "[a] proper application of § 1404(a) requires that a forum-selection clause be given controlling weight in all but the most exceptional cases." *Id.* at 579 (internal quotation marks and citation omitted). Also, the interests of justice include holding

---

[10] The "[f]actors relating to the parties' private interests include 'relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.'" *Atl. Marine*, 134 S. Ct. at 581 n.6 (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241, n. 6 (1981)).

[11] In *Atlantic Marine*, the Supreme Court noted that these factors may include: "'the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law.'" *Atl. Marine*, 134 S. Ct. at 581 n.6 (quoting *Piper Aircraft*, 454 U.S. at 241 n.6).

parties to their bargained-for agreement.  *See In re Union Elec. Co.*, 787 F.3d at 909–10.

       D.     Forum Selection Clause

      "Because 'the enforceability of a forum selection clause concerns both the substantive law of contracts and the procedural law of venue,' there is some disagreement among the circuits over whether state or federal law applies."  *Servewell Plumbing, LLC v. Fed. Ins. Co.*, 439 F.3d 786, 789 (8th Cir. 2006) (quoting *Sun World Lines, Ltd. v. March Shipping Corp.*, 801 F.2d 1066, 1068-69 (8th Cir. 1986)) (citations omitted).  Although the Eighth Circuit has yet to adopt a position on the issue, where the parties do not argue that the state and federal standards differ, the court will apply federal law.  *See M.B. Rests., Inc. v. CKE Rests., Inc.*, 183 F.3d 750, 752 (8th Cir. 1999); *cf. Rainforest Café, Inc. v. EklecCo, L.L.C.*, 340 F.3d 544, 546 (8th Cir. 2003) (recognizing that the Eighth Circuit has not explicitly ruled on the issue, but stating the Eighth Circuit is "inclined to agree" that "federal law controls the question of whether [a] forum selection clause applies" in a diversity case).

      To determine whether a forum-selection clause applies, a district court must interpret the language of the clause, *see Rainforest Café, Inc. v. EklecCo, L.L.C.*, 340 F.3d 544, 546 (8th Cir. 2003), which is done according to the plain language of the contract and the intent of the parties as expressed in the disputed clause, *see Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 31–32, (2004).  Forum selection clauses are presumptively valid and enforceable "unless they are unjust or unreasonable or invalid for reasons such as fraud or overreaching."  *M.B. Restaurants, Inc. v. CKE Restaurants, Inc.*, 183 F.3d 750, 752 (8th Cir. 1999).  A forum-selection clause is valid if it is "a freely

negotiated private . . . agreement, unaffected by fraud, undue influence, or overweening bargaining power." *See M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 12 (1972). The party opposing enforcement of a forum selection clause has the burden of "clearly show[ing]" the clause is invalid or should not be enforced. *See Bremen*, 407 U.S. at 15 (explaining that the party arguing that a forum selection clause is inapplicable "bear[s] a heavy burden of proof").

III.    ANALYSIS

   A.    Personal Jurisdiction

   The court first finds the defendants' motion to dismiss for lack of personal jurisdiction should be denied.  The evidence establishes that USIC has consented to suit in this jurisdiction by obtaining a certificate to transact business in this state and designating a registered agent for service of process.  The court need not address the "minimum contacts" issue, but notes that the defendants' activities in this state are not the sort of random or attenuated conduct that has been held insufficient to confer jurisdiction on the court.  The evidence shows that USIC has sales territories that cover Nebraska, has salespeople based in Nebraska, and conducts at least a small amount of business in Nebraska.

   The court next finds that the "first-filed" rule is of limited applicability in this case. The record shows there are two red flags indicating compelling circumstances that militate against application of the rule.  First, the CIG and the individual plaintiffs were on notice that USIC was going to take legal action against them in Indiana and shortly thereafter the plaintiffs filed this action, suggesting that they raced to the courthouse to usurp USIC's forum choice.  The plaintiffs' month-long delay in serving the defendant, or

at least informing it of the pendency of the action, is also suspect. Also, the plaintiffs are not "true" plaintiffs in this action since they seek declaratory judgment rather than damages. In the Indiana action, USIC seeks damages and enforcement of the contracts or covenants.

Also, the record shows USIC and CIG are direct competitors in the services they provide. The parties settled a similar action involving the same issues. Given the previous litigation history between USIC and CIG on the same issue, CIG was on constructive notice that USIC would file an imminent action after the individual plaintiffs resigned and began to work at CIG. This constructive notice, coupled with the short time between the plaintiffs' receipt of the cease and desist letter and the filing of this action is evidence that the plaintiffs attempted to preempt USIC's imminent lawsuit. Indeed, USIC's lawsuit was filed in Indiana state court before USIC was served with the plaintiffs' complaint in this action. Also, as discussed below, the forum-selection clause dictates that the court cannot give deference to the plaintiffs' choice of forum. Due to these compelling circumstances, the first-filed rule does not apply to this action and Indiana, not Nebraska, is the proper forum for this action.

In considering the defendants' alternative motion to transfer venue, the court finds the motion should be granted. In sum, the plaintiffs failed to meet their burden of "establishing that transfer to the forum for which the parties bargained is unwarranted." See *Atl. Marine*, 134 S. Ct. at 581.

There is evidence that a valid forum selection clause governs the parties' dispute. Although the plaintiffs argue that it would be unreasonable to enforce the forum selection clause, they present no evidence or argument that the clause is

unconscionable or the result of fraud. They do not argue that the agreements were affected by fraud, undue influence, or overreaching. Nor do they contend that the Agreements were not freely negotiated.

Under the terms of the forum selection clause in the Protective Covenants Agreements, three of the plaintiffs agreed to litigate any disputes involving the application or interpretation of the agreements in Indiana. The heart of the dispute is interpretation and applicability of the non-compete, nonsolicitation and nondisclosure clauses of the agreements. It is clear that the subject matter of this dispute falls within the scope of the forum selection clause—the claims relate to the plaintiffs employment with and separation from USIC.

Since the court's analysis involves a valid forum-selection clause, the court follows the framework of *Atlantic Marine*. The court affords the plaintiffs' choice of forum no weight, does not consider private interests, and considers public-interest factors only to determine whether the parties' forum selection clause is enforceable. A federal district court may have a local interest in deciding cases that involve state law from its district. Indiana has an interest in deciding an agreement that was entered into by an entity that has its principal place of business in Indiana.

The court finds the plaintiffs have not demonstrated the "extraordinary circumstances unrelated to the convenience of the parties" required for the court to deny transferring this action pursuant to the valid forum-selection clause. *Atl. Marine*, 134 S. Ct. at 575. They have not met their high "burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Id.* at 581–82.

Accordingly, the court will enforce the forum-selection clauses and transfer the signatory plaintiffs' claims against USIC to the Southern District of Indiana. The court must next consider whether to transfer the non-signatory plaintiffs' claims. In deciding whether to grant a transfer of claims where some claims are not governed by a forum selection clause, the court applies the ordinary Section 1404(a) analysis to those claims and considers the private interests of the parties, the public interest in litigating the case in the chosen forum, and the interests of judicial economy implicated by a potential severance.

Here, the private interest factors are inconclusive. Some weight is given to the plaintiffs' choice of forum, but many of the witnesses and most of the documentary evidence is likely to be in Indiana. Although CIG is headquartered in Nebraska, the only individual plaintiff who lives in Nebraska is Eric Moody. The other individual plaintiffs reside in Missouri, Iowa, and Florida. Nebraska would seem to be no more inconvenient than Indiana for those plaintiffs. Also, the plaintiffs have not made a strong showing of inconvenience with respect to the Indiana forum. The public interest factors do not weigh strongly either way given that this is essentially an employment dispute that is unlikely to have broader effect on the public at large, except to the extent that the interest of justice is served by holding parties to the benefit of their bargain.

The interests of judicial economy, however, strongly favor a transfer. Allowing two cases that involve the same issues to simultaneously proceed in different courts would lead to a waste of time, energy, money and judicial resources. If the court were to instead keep this case here, it would be ignoring the valid forum-selection clauses agreed to by the other three individual plaintiffs. *Atlantic Marine* militates against this

result. Accordingly, the Court finds that the interests of judicial economy favor the transfer of the entire action to the Southern District of Indiana.

IT IS ORDERED:

1.      Defendants' motion to supplement the record (Filing No. 25) is granted.

2.      Defendants' motion to dismiss or transfer (Filing No. 13 ) is denied to the extent that it seeks dismissal for lack of personal jurisdiction.

3.      Defendants' motion to dismiss or transfer (Filing No. 13 ) is granted in part to the extent that this action shall be transferred to the United States District Court for the Southern District of Indiana pursuant to 28 U.S.C. § 1404(a).

4.      Defendants' alternative Rule 12(b)(6) motions are denied without prejudice to reassertion in the Southern District of Indiana.

5.      The Clerk of Court is directed to transfer this action to the United States District Court of the Southern District of Indiana.

Dated this 18th day of May, 2017.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge